**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTONIO ALAMEDA JUAREZ,** *Petitioner,* | : | **CIVIL ACTION** |
| **v.** | : | **No. 26-cv-7008** |
| **MARKWAYNE MULLIN, in his Official Capacity, Secretary of the U.S. Department of Homeland Security, et al.,** *Respondents.* | : | |

**MEMORANDUM**

**KENNEY, J.** **OCTOBER 5, 2026**

Before the Court is Petitioner Antonio Alameda Juarez's Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 1). Petitioner seeks immediate release from detention on the basis that he "is being unlawfully detained in violation of 28 U.S.C. § 2241" and the Due Process Clause of the Fifth Amendment. ECF No. 1 ¶¶ 7–8. Respondents oppose any relief. *See* ECF Nos. 6, 12. For the reasons set forth below, the Petition (ECF No. 1) has been **GRANTED**, and Respondents have been ordered to immediately release Petitioner from detention. *See* ECF No. 13.

## I. BACKGROUND

Petitioner is a citizen of Mexico, who entered the United States in 2024. ECF No. 1 at 2. He has lived in the United States for the past couple of years "without incident." *Id.* On September 10, 2026, Petitioner was arrested and detained by officers of U.S. Immigration and Customs Enforcement ("ICE") pursuant to 8 U.S.C. § 1226(a). *Id.*; *see also* ECF No. 6 at 2–3. ICE officers did not have a Form I-200 Warrant for Petitioner's arrest at the time that they arrested him. ECF No. 12 at 2; ECF No. 1 at 2. Instead, they generated and executed a Warrant for Petitioner's arrest, *after* he was arrested. ECF No. 12 at 2; *see also* ECF No. 6-2 at 2. Petitioner "does not appear to

have been the target of any enforcement operation" at the time that he was arrested. ECF No. 1 at 4; *see also* ECF No. 6-1 at 3. The Petition followed. *See* ECF No. 1.

## II. LEGAL STANDARD

A federal district court can grant habeas relief when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Habeas is at its core a remedy for unlawful executive detention[,]" *Munaf v. Geren*, 553 U.S. 674, 693 (2008), and is "regularly invoked on behalf of noncitizens, particularly in the immigration context." *I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001), *superseded by statute on other grounds*. It is Petitioner's burden to demonstrate that he is being detained in violation of the Constitution or federal law. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941). In addition, the Fifth Amendment of the United States Constitution entitles noncitizens to due process of law in immigration and deportation proceedings. *See Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration proceedings who are entitled to due process of law—that is, a meaningful opportunity to be heard—before being deported.").

## III. DISCUSSION

Petitioner argues that he is being unlawfully detained. ECF No. 1 ¶¶ 7–8. For similar reasons as were recently articulated in *Tabora-Brizuela v. Mullin*, this Court agrees that Petitioner is being detained in violation of the Immigration and Nationality Act ("INA") and the Constitution. *See* No. 26-7010, 2026 WL 2908095, at *2–5 (E.D. Pa. Sept. 28, 2026). Accordingly, habeas relief is warranted. *See infra* Part III(B)–(D). As Petitioner has requested his immediate release from detention, the Court has ordered his immediate release. *See* ECF No. 13.

**A. Administrative Exhaustion**

Before seeking judicial relief, habeas petitioners "are ordinarily required to exhaust their administrative remedies." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (collecting cases); *see also Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) ("Although there is no statutory exhaustion requirement attached to § 2241, we have consistently applied an exhaustion requirement to claims brought under § 2241." (collecting cases)). However, exhaustion can be excused in circumstances where (1) exhaustion "would be futile[;]" (2) "the actions of the agency clearly and unambiguously violate statutory or constitutional rights[;]" or (3) "if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). "[T]he exhaustion doctrine is not supposed to preclude judicial relief[.]" *Id.*

Under the circumstances of this particular case, exhaustion "would be futile" and the actions of ICE "clearly and unambiguously" violated Petitioner's statutory and constitutional rights. *Id.* As relevant here, "[a] later bond hearing does not necessarily cure the alleged constitutional violation that preceded it." *Dos Reis v. McShane*, No. 26-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (collecting cases). It is undisputed that Petitioner was unlawfully arrested without a warrant, *see* ECF No. 9 at 2; ECF No. 12 at 2, so requiring a bond hearing at this posture would be futile in remedying Petitioner's current unlawful detention. *See Dos Reis*, 2026 WL 1746649, at *3. Furthermore, requiring the Court to defer until a bond hearing is held and an appeal has been heard before the Board of Immigration Appeals would simply delay adjudication of a "clear[] and unambiguous[]" violation of Petitioner's statutory and constitutional rights. *Lyons*, 840 F.2d at 205; *see also Tabora-Brizuela*, 2026 WL 2908095, at *5 ("[U]sing an after-the-fact warrant to justify a prior arrest . . . is statutorily prohibited under the INA." (quoting

*Parada Cruz v. Mullin*, 837 F. Supp. 3d 404, 410 (E.D.N.Y. 2026))). Accordingly, the Court will excuse exhaustion here.

**B. Immigration and Nationality Act**

Section 236(a) of the INA provides that "*[o]n a warrant* issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). "The language of this provision is clear: Section 236(a) 'requires a warrant for arrest'" and detention. *Tabora-Brizuela*, 2026 WL 2908095, at *2 (quoting *Hernandez v. Blanche*, No. 26-6195, 2026 WL 2569475, at *3 (E.D. Pa. Aug. 31, 2026) (collecting cases)); *see also Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (explaining that Section 1226(a) "authorizes detention [under that section] only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest" (quoting 8 U.S.C. § 1226(a))); *Sagbay v. Jamison*, No. 26-7265, 2026 WL 2875765, at *5 (E.D. Pa. Sept. 24, 2026) ("Section 1226(a) is not even triggered unless an arrest warrant is issued. . . . If the alien has not been arrested on a warrant, then the subsequent provisions giving the Attorney General discretion to detain or release the arrested alien are likewise not triggered." (internal quotations and citation omitted)); *Matter of Q. Li*, 29 I. & N. Dec. 66, 69 n.4 (BIA 2025) ("The regulation implementing DHS' authority to conduct arrests under section 236(a) authorizes a prospective arrest and contemplates that the subject of the warrant has not yet been arrested and taken into custody at the time the warrant is issued." (citation omitted)).

Only after the Court specifically ordered Respondents' counsel to personally review the body camera footage of Petitioner's arrest, *see* ECF No. 11, did Respondents concede that ICE did not have a warrant for Petitioner's arrest at the time that they arrested him; a warrant "was not

generated until" afterwards. *See* ECF No. 12 at 2.[1] It follows, therefore, that "[o]n its face . . . Section 236(a) does not provide a basis for the Government to hold Petitioner in custody." *Tabora-Brizuela*, 2026 WL 2908095, at *2; *see also Sagbay*, 2026 WL 2875765, at *5 (same).

Section 287(a) of the INA gives ICE "limited authority to make warrantless arrests" where they can demonstrate "'probable cause'" for the arrest. *See Tabora-Brizuela*, 2026 WL 2908095, at *2 (quoting *Lee v. Immigr. & Naturalization Serv.*, 590 F.2d 497, 500 (3d Cir. 1979)); *see also* 8 U.S.C. § 1357(a)(2) (explaining that officers have the authority to arrest a noncitizen "without warrant" if the officer "has reason to believe that the [noncitizen] so arrested is in the United States in violation of" certain immigration "law[s] or regulation[s] and is likely to escape before a warrant can be obtained for his arrest"); 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained

---

[1] In their initial Response, Respondents stated that "[a]lthough the petition alleges that ICE made a warrantless arrest, the Warrant for Arrest, Form I-200 reflects that ICE provided Petitioner with the form the same day." ECF No. 6 at 3. Upon further consideration of the Response and Petitioner's Reply, as the *Tabora-Brizuela* Court noted, this "artful language" is more artifice than art. 2026 WL 2908095, at *1. The language appears to have been employed by Respondents to dissuade the Court from the notion that Petitioner was not subject to a warrantless arrest.

Counsel states in Respondents' Second Supplemental Response that he did not "realize the warrant was not created until after the arrest." ECF No. 12 at 2. Counsel thus made a carefully worded representation to the Court apparently without having completed even a minimal investigation into the timing of the warrant. There is no excuse for not conducting basic investigatory work into the circumstances of Petitioner's arrest. If counsel needed additional time to complete this due diligence before filing a Response, counsel should have requested a short extension of the briefing deadline.

Counsel also states that he "did not understand the timing of the warrant to be central to Petitioner's argument[.]" *Id.* The Court finds it hard to believe that Respondents' counsel did not understand the importance of Petitioner's argument that he was subject to a warrantless arrest. ECF No. 1 at 4 ("[I]t is believed that ICE lacked a warrant for his arrest."); *see also id.* at 2 ("Upon information and belief, ICE lacked a warrant for his arrest and he was not the target of an enforcement operation."). Moving forward, any response that counsel from the United States Attorney's Office for the Eastern District of Pennsylvania file to habeas petitions brought by petitioners detained under Section 1226(a) must include a clear and affirmative representation in the first instance as to whether a petitioner's Form I-200 warrant was generated before or after an arrest was made.

except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). What is particularly troubling here, and a cause for great concern relative to the rule of law, is that the Government has not put forth in any of its filings a single fact as a foundation for even a reasonable suspicion, let alone probable cause, suggesting that ICE had the legal authority to proceed with a warrantless arrest of Petitioner. To the contrary, the Form I-213 that ICE officers filled out after Petitioner's arrest indicates that when they pulled Petitioner over on September 10, 2026, "he was not the Target" that they were seeking. ECF No. 6-1 at 3 (indicating that they were seeking an individual named Pedro Pajaro Martinez).[2] "Information that [an] officer learns after an arrest cannot justify a warrantless arrest, as an officer cannot form a belief about probable cause based on information they do not know." *Tabora-Brizuela*, 2026 WL 2908095, at *2 (citing *Henry v. United States*, 361 U.S. 98, 102–04 (1959)).[3] Nor is there any indication in the arrest narrative that the ICE officers had "reason to believe" that Petitioner was "likely to escape before a warrant [could] be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2). Rather, the Form I-213 indicates that Petitioner "followed [the] commands" of the arresting officers and there is no suggestion that he attempted to flee. ECF No. 6-1 at 4.

---

[2] Furthermore, it is not clear from the Form I-213 whether ICE officers provided Petitioner with the "[n]otifications and information" that they are required to provide when arresting noncitizens without a warrant. *See* 8 C.F.R. § 287.3(c).

[3] Respondents argue that "Petitioner's claim regarding the legality of his arrest is not cognizable in habeas" and "such claims may only be brought through a motion to suppress in immigration court . . . or, if cognizable, as a civil rights claim for damages." ECF No. 12 at 3 (citing *Oliva-Ramos v. Att'y Gen.*, 694 F.3d 259, 264–65, 270–72 (3d Cir. 2012)). This Court agrees with the *Tabora-Brizuela* Court that *Oliva-Ramos* is inapposite. *See* 2026 WL 2908095, at *3. As in *Tabora-Brizuela*, here, "the issue is the *legality* of Petitioner's arrest, not exclusion of evidence." *Id.* (emphasis added). Petitioner is contesting whether he has been arrested and detained consistent with the Due Process Clause and INA, and, therefore, is challenging the legality of his custody.

As the *Tabora-Brizuela* Court emphasized, "[p]ost-hoc warrant practice is by any measure 'constitutionally problematic[,]'" and permitting "the Government to launder an unlawful arrest through a post-hoc warrant would greenlight authorities to make baseless arrests and conjure a reason to hold them later." 2026 WL 2908095, at *5 (quoting *Parada Cruz v. Mullin*, 837 F. Supp. 3d 404, 410 (E.D.N.Y. 2026)); *see also Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1226 (D. Colo. 2025) (finding that "the *post hoc* warrants" that were issued "had no legal effect"). Accordingly, for these reasons, Petitioner's detention pursuant to a warrantless arrest that lacked probable cause violates the INA, which is "grounds for habeas relief." *Tabora-Brizuela*, 2026 WL 2908095, at *3; *see also Sagbay*, 2026 WL 2875765, at *5 (same).

**C. Due Process Clause**

In addition, Petitioner argues that his detention violates his procedural due process rights.[4] The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases). To determine if Government action violates procedural due process, courts weigh the following factors as set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and

[4] The Court need not address whether Petitioner's substantive due process rights have been violated.

administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

The first *Mathews* factor weighs strongly in Petitioner's favor. He has a private interest "in being free from physical detention" and "'[i]t is clear that commitment for *any* purpose constitutes a significant deprivation of liberty that requires due process protection.'" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529–30 (2004) (plurality opinion) (quoting *Jones v. United States*, 463 U.S. 354, 361 (1983)); *see also Zadvydas*, 533 U.S. at 690 (explaining that being free from physical detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Since Respondents have detained Petitioner under Section 1226(a), he "is owed the process due under that statute, . . . which in this case required a warrant [or probable cause] before arrest." *Tabora-Brizuela*, 2026 WL 2908095, at *3 (internal quotations and citation omitted).

The second *Mathews* factor also weighs in Petitioner's favor. There is a significant "risk of an erroneous deprivation" when ICE acts to detain an individual under Section 1226(a) without first determining whether there is a legitimate reason for doing so or sufficient time to secure a warrant, and without complying with applicable statutory and administrative regulations. *See Mathews*, 424 U.S. at 335; *see also Tabora-Brizuela*, 2026 WL 2908095, at *4 ("[T]he risk of erroneous deprivation is significant when officers act without forethought and deliberation."); *Torres Guevara v. Warden of Fed. Det. Ctr. Phila.*, No. 26-7077, 2026 WL 2838542, at *4 (E.D. Pa. Sept. 22, 2026) ("There is a high risk of erroneous deprivation where the government physically detains a person without identifying a valid reason to do so."); *Yeleshev v. Larocco*, No. 26-CV-2294, 2026 WL 1353806, at *3 (E.D.N.Y. May 14, 2026) ("[W]hen someone is arrested first, and the reasons located later, there is an inevitable pressure to 'justify' or find some legal basis for removal proceedings, which heightens the risk of error and in other cases, something far

worse.”). As discussed above, the record before the Court does not reflect that Respondents had probable cause to arrest and detain Petitioner without a warrant.

With respect to the third *Mathews* factor, the Court acknowledges that Respondents have a valid interest in enforcing immigration laws and protecting the public from danger. However, at the same time, Respondents and ICE also have an interest in and an obligation to abide by the rule of law and follow applicable statutory provisions and regulations when carrying out their official duties. *See* 8 U.S.C. § 1226(a); *id.* § 1357(a); 8 C.F.R. § 287.8(c)(2)(ii). Requiring compliance with these provisions certainly “does not amount to a detrimental ‘burden’” on Respondents. *Tabora-Brizuela*, 2026 WL 2908095, at *4. Indeed, “the mere fact that the [G]overnment has the authority to detain someone does not mean that it may do so in any manner it chooses, without affording due process.” *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 157 (W.D.N.Y. 2025) (citation omitted); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (explaining that when “the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures”); *Marshall v. Lansing*, 839 F.2d 933, 943 (3d Cir. 1988) (explaining that “principles of due process require an agency to follow its own regulations, which have the force of law”); *Montilla v. I.N.S.*, 926 F.2d 162, 164 (2d Cir. 1991) (“The notion of fair play animating [the Fifth] [A]mendment precludes an agency from promulgating a regulation affecting individual liberty or interest, which the rule-maker may then with impunity ignore or disregard as it sees fit.”). Accordingly, this factor, too, weighs in Petitioner’s favor.

On balance, the Court finds that the *Mathews* factors weigh in favor of a determination that Petitioner’s warrantless arrest and detention have resulted in a violation of his procedural due process rights, which is an additional ground for habeas relief. *See Tabora-Brizuela*, 2026 WL 2908095, at *4.

**D. Remedy**

Respondents have violated both the INA and Petitioner's procedural due process rights by arresting and detaining him without a warrant or probable cause. Accordingly, Petitioner is being held "in custody in violation of the Constitution [and] laws . . . of the United States." 28 U.S.C. § 2241(c)(3). A federal court adjudicating a petition for a writ of habeas corpus is authorized to "dispose of the matter as law and justice require[,]" *see id.* § 2243, and has "equitable discretion to decide whether to issue the writ or to provide a remedy." *Edwards v. Vannoy*, 593 U.S. 255, 289 (2021) (Gorsuch, J., concurring). "The traditional function of the writ of habeas corpus is to secure release from unlawful executive detention." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323 (3d Cir. 2020) (citing *Munaf*, 553 U.S. at 693). As in *Tabora-Brizuela*, immediate release from detention is also warranted in this case. 2026 WL 2908095, at *5; *see also Sagbay*, 2026 WL 2875765, at *5–6 (ordering immediate release of a petitioner where he was arrested and detained "without an administrative warrant"). This "remedy aligns with numerous cases releasing habeas petitioners held in custody following procedural due process violations." *Funes v. Francis*, 810 F. Supp. 3d 472, 502 (S.D.N.Y. 2025) (collecting cases).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court has granted the Petition (ECF No. 1), and ordered Respondents to immediately release Petitioner from detention and to certify their compliance with the Court's Order. These directives are memorialized in the Court's October 1, 2026 Order. *See* ECF No. 13.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**